Gallup v. The Albany Railway.

withdraw their names from the petition at any time before the case is finally submitted to the county judge.

The offer made by the contestants covered this distinct proposition, was not objected to as being sufficiently specific, and it is no answer to its admissibility to say that no contestant appeared and offered to withdraw. The ruling of the county judge precluded any necessity of a personal appearance of each one or any of the tax-payers referred to, and so long as the offer appears to have been made in good faith it was sufficient. In fact, it is to be assumed, in the absence of any intimation in the proceedings to the contrary, that they were ready to present themselves if they had not been prevented from doing so, even if they were not personally present.

Several other objections are urged to the proceeding, but as the error of the county judge already stated is a fatal one, it is not necessary to discuss them.

The motion to set aside the proceedings must be denied, and the proceedings reversed and dismissed, without cost.

---

NATHANIEL GALLUP, Respondent, v. THE ALBANY RAILWAY, Appellant.

(GENERAL TERM, THIRD DEPARTMENT, SEPTEMBER, 1872.)

Consequential damage to the demised premises resulting from the lessor's acts not done upon them, and not depriving the tenant of possession of any part of them, is no defence to an action for the rent.

The defendant, a horse railway company, leased the plaintiff's premises located in a city and on a public street; on which street, by permission of the municipality and subject to the latter's right to repair, alter, &c., it had placed tracks communicating with the premises. Afterward, under a city ordinance, the grade of the street was changed and the communication removed and rendered impracticable, materially impairing the value of the plaintiff's occupancy. *Held*, that the plaintiff's damages were not a defence to an action for rent.

*Held*, also, that they did not arise out of the same contract or transaction, as the claim for rent.

Gallup *v.* The Albany Railway.

Whether covenants in leases may be implied as at common law under the Revised Statutes, *quere.*

But the covenant for quiet enjoyment is not to be implied as extending to the enjoyment of anything beyond the demised premises.

Nor to override other necessary implications in the lease.

*Mack* v. *Patchen* (42 N. Y., 171) explained in this particular.

Where the lessor did the grading under an option given, by the ordinance, to the owners of adjoining property,—*Held,* that in so doing he acted as the agent of the city, and his act was the act of the latter.

And that the act of the plaintiff not being willful or trespass, the defendant's damages could not be counterclaimed or recouped in an action for rent.

Where taxes are assessed upon the demised premises, which, by covenant in the lease, the tenant is to pay, but refuses to do so on demand after warrant issued for their collection, the lessor may pay the same and recover the amount from him.

THIS was an appeal from a judgment for the plaintiff, entered on the report of a referee.

The plaintiff sued, on the 17th September, 1869, to recover certain taxes paid by him, alleging the defendant's liability, under a certain demise, as follows, viz. :

" This is to certify that the Albany railway have hired and taken from N. Gallup the premises now occupied by them, in the ninth ward of the city of Albany, on the corner of Swan and Fayette streets, for the term of two years, to commence the first day of May next, at the yearly rent of $1,000, payable quarterly, and the ordinary taxes and water rates and repairs necessary, with all alterations, if any needed. And they do hereby promise to make punctual payment of the rent, in the manner aforesaid, and quit and surrender the premises at the expiration of the said term in as good state and condition as reasonable use and wear thereof will permit, damages by the elements excepted. And they also promise not to let the aforesaid premises, or any part thereof, to any person or persons whatever, without obtaining the written permission of the said lessor. And in case of not complying with any of the covenants contained herein, the lessor, in his option, shall have the power and the right of terminating and ending this lease immediately, and agree to forfeit to the said lessor the sum of $100, as and for liquidated damages.

"In case said premises shall be destroyed by fire before or during said term, then this lease to cease and determine ; the rent to be paid up to that time.

"Given under my hand and seal the 9th day of April, 1868. Signed," &c.

The defendant, among other matters, alleged in defence and as a counterclaim that the plaintiff had not permitted it to have the sole and uninterrupted use of the demised premises, and set forth certain acts of the plaintiff in the digging down of streets on which the premises were situated, and other acts in connection with the same.

Upon the trial the plaintiff proved the lease and the assessment upon the demised property in 1868 against him, as the owner thereof, of taxes for that year; also the issuing of a warrant for collection thereof and his payment of the same ; and that before making the payment, and after presentation to him of the warrant issued, he had called upon the defendant's president, notified him of the warrant, and demanded that the taxes should be paid, which demand was refused.

It also appeared, and the referee found, that the defendant's railway was laid upon Swan street and communicated with the demised premises, upon which the defendants had extensive accommodations for storage of its cars and stabling. The tracks had been so laid by the defendant, prior to the date of the lease, and while the defendant occupied the premises under prior rights of occupancy. The branch from the main track across the sidewalk, communicating with the stables, &c., had also been made at that time, and a bridge had been built over the gutter next to the sidewalk.

The plaintiff proved, under defendant's objection, an ordinance of the city of Albany, of June 15, 1868, for the excavation and filling of Elk street, on which the demised premises were situated, and also a similar ordinance for the excavation, filling, &c., of Swan street, upon which they were also situated, of September 7th, 1868.

It was also shown and found that proceedings were taken,

under the ordinances for grading the streets, in accordance with them, and that advertisement was made by the street superintendent of the city for proposals for the work; that the plaintiff notified the city that he would do the work in front of the demised premises, as he claimed the right to do under other existing ordinances of the city, and thereafter began the work in that respect, and prosecuted it with proper diligence to completion, and that the work was accepted by the authorized superintendent of the city.

That in performing the work it became necessary to lower the grade of Swan street and destroy the communication from the tracks on that street with the premises, and that the defendant was obliged to incur expense in making new buildings and changes in the old buildings, and to abandon entirely the communication from Swan street, and to suffer other damages and inconvenience in its occupancy of the premises.

The referee also found as follows, viz. :

"1. That the work of excavating and grading Swan street in front of the premises in question was commenced in September, 1868, and was not completed until about the middle of June, 1869.

"2. That the said work might have been done in from ten to thirty days.

"3. That if the plaintiff had not elected to do the work himself, and the same had been done under the direction of the street superintendent, it would not have been commenced until the spring of 1869, and the defendant would have continued to have the use of the whole of the premises in question until that time.

"4. That by reason of plaintiff's electing and undertaking to do the work himself, the defendant was deprived of the use of its car-house from September, 1868, till the spring of 1869.

"5. That the following is the only law or ordinance under which the plaintiff had the right or privilege to give notice to the superintendent that he would himself do the work

Gallup *v.* The Albany Railway.

required by the ordinance of September 7th, 1868, to be done in front of said demised premises, or to do said work, viz.:

"'§ 5. Whenever the level or pitch of a street to be improved shall have been established by the common council, and the work shall be otherwise ready to be contracted, notice thereof in writing, signed by a majority of the flagging and paving committee, and specifying the street to be improved, shall be given to the superintendent of that section in which the contemplated improvement is to be made; and the said superintendent shall thereupon give public notice that proposals will be received for making such improvement, and that those owners of lots who may wish to make the improvement themselves in front of their own property, so far as they are interested, must signify their intention so to do to said superintendent in writing before the expiration of said notice. The proposals shall be required to state the price per cubic yard for excavating, filling, pitching, leveling or forming a street, and whenever a street is to be paved, or paved and flagged, they shall be required to state the price per running foot for each lot. And in all cases the said proposals shall include the furnishing of sand, paving-stone, curb-stone, brick, and all other materials, paving, and all other labor necessary to make the said improvement, as contemplated by the law ordering the same.'"

The findings of the referee, which were in favor of the plaintiff, will appear from the following exceptions taken by the defendant, viz.:

"1. Defendant excepts to the finding of the referee, that the plaintiff and defendant, as parties to the lease mentioned in said report, contracted with reference to the possibility of an alteration in the grade of Swan street by the authorities of the city of Albany, and that defendant in taking said lease impliedly assumed the risk from the happening of such contingency.

"2. And defendant also excepts to the conclusion of said referee, that plaintiff was at liberty to perform the work of excavating and grading Swan street, at the time and in the manner in which the same was performed by him.

"3. Defendant also excepts to the conclusion of said referee, that in performing the said work the defendant acted as the agent duly authorized of the city of Albany, to carry out said ordinance.

"4. Defendant also excepts to the conclusion of said referee, that the defendant was bound to pay the taxes when they were paid by plaintiff, and bound to pay the same to the proper authorities, and that upon payment by the plaintiff an immediate cause of action accrued to him for the amount so paid.

"5. Defendant also excepts to the conclusion that the defendant cannot recoup or set off any damages by reason of the premises, or defend against this suit by reason of any disturbance of his possession by the acts set forth in the said report.

" 6. Defendant also excepts to the conclusion that the action is well brought, and that the plaintiff is entitled to recover the sum of $286.99, and interest and costs.

"7. Defendant also excepts to said report, for that it does not find that defendant was wrongfully evicted from a portion of the demised premises by plaintiff, and that therefore plaintiff cannot recover in this action.

" 8. Defendant also excepts to said report, for that it does not find that defendant has a good cause of action against the plaintiff for the sum of $636.69, by reason of the acts of eviction and disturbance mentioned in said report, and is entitled to judgment for the same by way of counter-claim against the plaintiff.

" 9. Defendant also excepts to said report, for that it does not find that this action was prematurely brought by plaintiff, and that no liability for taxes on the demised premises could be enforced until the expiration of the term of said lease."

*Matthew Hale*, for the appellant.

*G. L. Stedman*, for the respondent.

Present—P. POTTER, P. J.; PARKER and DANIELS, JJ.

Gallup *v.* The Albany Railway.

P. POTTER, P. J. The defendant continued to occupy the whole of the demised premises during the term of the lease. Unless the defendant was evicted of the demised premises or some part thereof, he is liable to the payment of rent so long as he remains in possession under his lease.   The defendant has a remedy to recover damages for the breach of any express or implied covenant by an action for such breach (*Etheridge* v. *Osborn*, 12 Wend., 529, 531, 532); though, perhaps, under the Code, where the demands of both parties spring out of the same contract or transaction, the defendant may recoup, even though the damages are unliquidated.  But the damages in this case, claimed to be recouped, do not arise out of the same contract, but from a tortious act, as claimed, of the plaintiffs, in depriving them of access to a portion of the premises, and from the proper enjoyment thereof.  These acts complained of are entirely independent of any covenant in the lease and are only consequential, and resulting from acts *not* committed upon the demised premises, the whole of which the defendant continued to occupy for the whole term. These acts are no defence to an action for rent. (*Edgerton* v. *Page*, 20 N. Y., 284.)

Neither the railroad in question, nor the streets upon which it was constructed, were any part of the demised premises. The right to use the railroad was enjoyed by the defendant before the date of the lease, and was entirely disconnected with the covenants in the plaintiff's lease, if any there were. The plaintiff assumed therein no right, control or authority over these streets; he received no consideration on account of them or their use, but, on the contrary, the right to use the said streets by the defendant had been granted to them before that time by the common council of the city of Albany, to whom they had made application for that purpose, and it was granted to them subject to the compliance by the defendant with certain conditions therein specified not only, but in contemplation of law they consented to accept of and enjoy them, subject to the powers of the said common council, under the twenty-ninth section of their charter (Laws of

1842, chap. 275), "to regulate, keep in repair and *alter* the streets" of said city.

I think, therefore, that the learned referee was right in holding that the parties to the said lease contracted therein with reference to the possibility of an alteration in the grade of Swan street by the authorities of said city, and that the defendant, in taking said lease, impliedly assumed the risk of the happening of such contingency; and I think the referee might have added, that this risk was assumed by the defendant at the time of locating their road in said street, and prior to the date of the said contract of lease made with the plaintiff, and was no part of their contract with him. This case is clearly distinguished from *Blair* v. *Clayton* (18 N. Y., 529). In that case there were clear express covenants, on the part of the lessor, that the lessee should forever have and possess the right to use the amount of water specified, for the machinery described, with a positive covenant from the grantors for quiet enjoyment, without any hindrance, disturbance or molestation, &c., of appurtenances, a part of the thing demised.

In the case at bar, there were no words of grant, title or possession, or any covenant whatever on the part of the plaintiff as lessor, as will be seen by reference to the lease. And if, since the Revised Statutes (vol. 1, p. 738, §§ 160 [140]), covenants *can be implied*, as at common law, in a lease, as is claimed (and as seems to be stated by EARL, J., in *Mack* v. *Patchen*, 42 N. Y. R., 171), it will not be implied to extend to the enjoyment of anything beyond the limits of the demised premises; nor, as an implication of law, to override a prior implication of law to the contrary; nor, also, to the implication of a knowledge of the fact, on the part of the defendant, that he located the track of the said railroad, subject to such alterations as the common council of Albany, in their discretion, should make in the grade of their streets. And especially must this be so, where the claimed eviction is occasioned through no fault of the lessor. As the case of *Mack* v. *Patchen* is relied on by the defendant with confi

dence, as controlling in this case, it is worthy of remark that, though it is said in that case that there was no *express* covenant of quiet enjoyment, it does not appear that there may not have been other covenants therein, which were equivalent to it and included it. The lease itself, in that case, does not appear, nor does it appear what other covenants were contained in it. The word *concessi* or *demisi*, in a lease, are words that imply a covenant for quiet enjoyment. (Spencer's Case, 5 Coke; 16 Shep. Touch., 160.) So from the word *grant*, in a lease or an assignment, a like covenant may be implied. (*Baker* v. *Harris*, 9 Ad. & Ellis, 535.) So a covenant to warrant and defend the title. (4 Kent Com., 472.) But in the absence of all covenants, since the Revised Statutes above cited, I do not think the case of *Mack* v. *Patchen* intends to hold that *in all leases*, without regard to form and language, there is an *implied* covenant for quiet enjoyment. It was not so even before the statute. This is not held in *Mack* v. *Patchen*.

In grading the street in front of the demised premises, the act was the act of the common council by their agent. The common council had the power to direct the act to be done. They did direct it. It was their act, equally the same, whether the plaintiff or another acted as the agent or servant in executing the direction. The law adds no individual responsibility upon the agent, provided he performs the act within the sphere of the duty of an agent or servant of the corporation. The law allowed the plaintiff to be such agent.

If the act of the plaintiff was a trespass, it was not directly committed upon the demised premises; even an individual personal act of the lessor, amounting to a mere trespass, not interfering with the substantial enjoyment of the demised premises by the lessee, is not equivalent to an eviction. (31 N. Y., 514.) There was neither actual nor constructive expulsion of the defendant from any portion of the premises.

But it is claimed that the plaintiff was liable to the defendant for the injury sustained by the latter, resulting from the

act of the former as found by the referee in the following fact, in addition to those in the original report, viz. :

1st. That the work of excavating and grading Swan street in front of the premises in question was commenced in September, 1868, and was not completed until about the middle of June, 1869.

2d. That the said work might have been done in from ten to thirty days.

3d. That if the plaintiff had not elected to do the work himself, and the same had been done under the direction of the street superintendent, it would not have been commenced until the spring of 1869, and the defendant would have continued to have the use of the whole of the premises in question until that time.

4th. That by reason of plaintiff's electing and undertaking to do the work himself the defendant was deprived of the use of its car-house from September, 1868, until the spring of 1869.

1. This as a defence was not set up in the answer, and is not therefore a counter-claim.

2. The act of the plaintiff was not proved or found to be illegal.

3. That the act of the plaintiff being the act of the corporation, and not being either a trespass or such a willful act as to make the plaintiff as a servant or agent individually responsible, the injury, if any, could not be either a counter-claim or recouped in action.

4. The time occupied in performing the act complained of was a question directly between the plaintiff and the corporation of the city, and the injury to the defendant, being consequential, cannot be an offset, counter-claim, or subject of recoupment or defence to an action for rent.

The payment of the taxes and water rates of the demised premises were a part of the rent due to the plaintiff by the terms of the lease, and which the defendant covenanted to pay ; which it omitted to pay ; which it was notified and requested to pay ; which the plaintiff personally and the

plaintiff's property so demised was legally liable to pay; and after a warrant pursuant to law had been issued for the collection thereof, and the defendant requested to make payment, refused to pay.   Thereupon the plaintiff paid the same, he being personally liable for the payment thereof.   (Act of 1850, chap. 86, § 37.)   These taxes so paid is the cause of action and the basis of recovery, the amount of which is not controverted.

I think it is clear that a party who is personally liable to pay such taxes, or whose property is liable to pay them, whose tenant is liable by covenant to pay them, and who omits or refuses to pay, upon proper demand may pay, and bring his action against the defaulting tenant and recover the same.   (*Lageman* v. *Kloppenburg*, 2 E. D. Smith R., 126.) If I am right in the views above expressed, the judgment should be affirmed, with costs.

Judgment affirmed.